Folger, J.
 

 The facts of the case can be briefly stated. Enoch II. Iiosekrans, at the adoption in 1870 of the judiciary article by which the Constitution was amended, was an incumbent of the office of justice of the Supreme Court for the fourth district. His term of office would not expire until the 31st of December, 1871. By the sixth section of that article he was empowered to continue in office until the expiration
 
 *378
 
 of that term. But, on the 6th day of November, 1871, he resigned the office. On the 7th day of November, 1871, at the general election then duly held in the fourth district, the electors thereof chose Joseph Potter to succeed him. This choice was for the full term of fourteen years provided for by the thirteenth section
 
 of
 
 that article. This full term was to have its beginning on the first day of January thereafter. The resignation of Mr. Justice Bosekrans occasioned a vacancy in the office, which the Governor filled by the appointment thereto of Samuel W. Jackson, the appellant herein. This action of the Governor was authorized by the provisions of section nine of that article, which reads as follows:
 

 “ Section 9. When a vacancy shall occur, otherwise than by expiration of term, in the office of justice of the Supreme Court, the satine shall be filled for a full term, at the next general election happening not less than three months after such vacancy occurs; and until any vacancy shall be so filled, the Governor, by and with the advice and consent of the senate, if the senate shall be in session, or if not in session, the Governor may appoint to fill such vacancy. Any such appointment shall continue until and including the last day of December next after the election at which the vacancy shall occur.”
 

 It is now claimed, in behalf of Mr. Justice Jackson, that by virtue of the appointment of the Governor, he may hold the office until the last day of December 1872; and he appeals from the judgment of the General Term of the Supreme Court denying his right so to do.
 

 It will not escape attention that the argument by which the appellant’s position is sought to be sustained is confined to a consideration of the ninth .section of the sixth article of the Constitution. To be successful, it must not only be so restricted, but he must insist upon a rigid literal and exclusive adherence to the terms of the section. In this it runs counter to cardinal canons of construction. In the construction of a law, every part of it must be viewed in connection with the whole, so as to make if possible all its parts harmonious. (1 Kent,
 
 462.)
 

 
 *379
 
 The intent of the law-maker is to be sought for. When it is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by considering the words of any part, but by ascertaining the general purpose of the whole, and by considering the evil which existed calling for the new enactment, and the remedy which was sought to be applied. And when the intent of the whole is discovered, no part is to be so construed as that the general purpose shall be thwarted, but all is to be made to conform to reason and good discretion. (Id.) And the same rules apply to the construction of a Constitution as to that of a statute law. (Per Johnson, J.,
 
 Newell
 
 v.
 
 People,
 
 7 N. Y., 9-97.)
 

 When the whole sixth (or judiciary) article of the Constitution is considered, certain purposes are clearly indicated. It was purposed to provide for the State a general and complete and continuous judicial system, and to create, or recognize and continue, all the judicial officers needed therefor, save those of inferior local courts. (§19.) It was designed that the general and (except in cases of exigency, and for some inferior local courts) the exclusive mode of filling these offices (unless the people, at a time therein provided for, do determine otherwise) (§17), should be by election by the people, and not by appointment. (§§2, 13, 15, 16, 18, 19.) And that that election should, for the officers Of higher grade be a general one, when it was more likely that the whole people would take part in it. It was conceived that the system to be supplanted was defective, in the short term of office it gave; and hence it was intended by the new article, to create and secure a longer term, and to avoid fractions of terms. (Sections above cited, and §§ 3, 9, 12.) It was designed that one full term should follow directly after another full term, with no break of regular and connected succession. It was so arranged that these terms should end with one and begin with another and the next political year; whereby the people and all their executive officers should know beforehand to take care for the expiration of a term, by provision to that
 
 *380
 
 end at the previous general election." (§§ 2, 13, 15.) For although this article does not in terms, speak in these sections of the general election, yet a Constitution is to "be held as prepared and adopted in reference to existing statutory laws upon the provisions of which in detail, it must depend to be set in practical operation.
 
 (Cass
 
 v.
 
 Dillon,
 
 2 Ohio, N. S., 607; and see, per Walworth, Ch., in
 
 The People
 
 v.
 
 The Mayor, etc.,
 
 25 Wend., 9-13; per Denio, Ch. J., in
 
 The Peoples. Draper,
 
 15 N. Y., 532-537.)
 

 Such are some of the more important general purposes of this judiciary article. These were some of its provisions which are in regular routine to be ordinarily operative. But there were also contingencies apprehended and to be provided for, which could not be met by them, and which required exceptional provisions of occasional and temporary operation. It is consonant with law and with common sense, that these should not clash with the general design, but should be in harmonious subservience thereto. They should be in the nature of saving clauses in a statute (Dwarris, 513), or exceptions in a conveyance, something smaller than the thing itself, and not nullifying it. (4 Kent, 468.) When a general intention is expressed in an act, and also a particular intention incompatible therewith, the last shall not restrain the signification of the first.
 
 (Andree
 
 v.
 
 Fletcher,
 
 2 T. R., 164
 
 Churchill
 
 v.
 
 Crease,
 
 5 Bing., 180.)
 

 It was foreseen that, in the various ways designated by the statute as to vacancies in office (1 R. S., 122, § 25), vacancies would occur, to the public harm if left unfilled. So the filling of a vacancy was provided for. {§§ 3, 9, 12.) It catches our attention as to this too, that the general plan of the article is still held to. Only the vacancies designated in the statute are provided for. These do not include a result of an expiration of the term of the office. That is still left to be provided for according to the general purpose, by the choice of the electors at the general election previous thereto. And vacancies cared for are as a prime intent, to be filled by
 
 *381
 
 election. The election to that end is to be for a full term, so that then also a fractional term may be shunned.
 

 But just here a possible mischief was to be guarded against. It was a matter of political and judicial history that under the late system, a vacancy had occurred in judicial office on the eve of an election, and that without the formalities of notice from the Secretary of State, or from the sheriff of the county, or from any other officer prescribed by law, one had been chosen to fill the same.
 
 (The People ex rel. Davies
 
 v. Cowles, 13 N. Y., 350; Laws of 1847, vol. 1, p. 263, chap. 240, § 7.) And it was perceived as a possibility, that unknown to the mass of the electors, an inconsiderable number of them might exercise the right and perform the duty to which all should be called, and a few votes cast without general notice might choose an incumbent for the vacant office. He might be one unfit for the place, unworthy of the confidence of the people, and unable to secure their suffrage. There was this possible danger to be forecast against. And to that end, a novel and peculiar provision was adopted. It was that, though as a general proposition the vacancy should be filled at a general election and for a full term, yet as an exception therefrom, it should not be filled by election at a general election happening less than three months after the vacancy should occur, so that full notice should be had of the occasion. But as it might in such case, chance that some time would elapse before the vacancy could be supplied by election, to the public inconvenience, this further contingency was met by this other still more subordinate provision, that, until it should be so filled, the Governor was empowered, with or without the advice and consent of the Senate, as it should or should not be in session, to fill it by appointment.
 

 And holding to the words of this section, and relying upon them alone, the proposition urged in behalf of the appellant is, that the choice of the electors is defeated; a choice made at the general election previous to the prefixed expiration of a regular term; a choice of a successor for a new and full term approaching in its regular order of succession. The
 
 *382
 
 proposition is that the selection by the people is postponed until the next political year, and thrown beyond the commencement of the foreordained regular term; that a fractional term of twelve months or over is created, and that such creation is by executive appointment and not by election. It is apparent that if such a construction of the ninth section is adopted, much of the general intention of the article is nullified. Other more irritating evils must flow from such a construction, if it shall prevail. It is true that where there is no doubt of the intention of the law-maker, an argument from the consequences of the enactment can have no weight.
 
 (The People
 
 v. Green, 2 Wend., 277, per Marcy, J.)
 

 But the converse is also true.
 
 (Ayers
 
 v. Knox, 7 Mass., 306; and see
 
 Henry
 
 v. Tilson, 17 Vt., 479.) Where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the lawmaker be plain. Every part is to be considered, and the intention extracted from the whole.
 
 (U. S.
 
 v. Fisher, 2 Cranch, 358.) “ Where fundamental principles are overthrown, where the general system of the law is departed from, the legislative intention must be expressed with irresistible clearness; and in such a case courts will regard the consequences of a particular construction.” If it appears that by a construction in a particular case great public interests will be sacrificed, it ought not to be intended that the law-maker contemplated such a construction, in disregard of such interests.
 
 (The People
 
 v.
 
 Canal
 
 Commissioners, 3 Scam., 160.) If a vacancy in a term just about to expire, occurring by a resignation made the day before a general election, may defeat the electors of their privilege to choose an incumbent for the new term just about to begin, so a resignation on the day after, or on any day after the election during the running of the term, will have the same effect. Hore than that, too. The appointee of the Governor, who, according to this construction may hold the office for the whole of the political year succeeding his appointment, can before that year expires, and within three months of the gene
 
 *383
 
 ral election of that year, or after the general election and during the year resign his office, and then a vacancy again occurs, to be again filled by appointment for a like fractional term of twelve months or more. And this succession of appointment and resignation, and resignation and appointment, may be kept up as long as the judicial and executive servants of the people may be willing to act in it. Thus would the electors be permanently defeated in the exercise of their constitutional privilege of choice. It needs not to name all the evils which would thus result. It is sufficient to say that it would work an entire perversion of the spirit and general intent of the judiciary article. And for that reason such a construction is to be rejected, upon the principles of construction above laid down, unless the clear and unmistakable force of the ninth section, when read in connection with the entire article, shuts us up to it.
 

 But we are not thus bound, save by a rigid adherence to the very letter of the section, regardless of other parts of the article, of equal or greater importance, and of equal claim to consideration. The ninth section says that “ when a vacancy shall occur * * the same shall be filled for a full term at the next general election, happening not less than three months after such vacancy occurs.” But the sixth section, which is concerned with the general purpose of the article, says that “ there shall be the existing Supreme Court * * and it shall be composed of the justices now in office, who shall be continued during their respective terms, and of their successors.”
 

 What arc the
 
 “
 
 respective terms” is to be ascertained by reference to the statutes and the facts of each case. In this case the term began January 1st, 1864, and ended December 31st, 1871. The thirteenth section says: “ Justices of the Supreme Court shall be chosen by the electors of ther respective judicial districts.” And as constitutions are framed and adopted in dependence, for the details of their operation, unless otherwise provided, upon the statute law then existing^ this provision of the thirteenth section is the same as if it had
 
 *384
 
 further said, “ at the general election next preceding the expiration of the prescribed term of their predecessors.”
 

 The thirteenth section further says : “ The official term of the said justices * * * who shall be elected after the adoption of this article shall be fourteen years, from and including the first day of January next after the election,”
 
 i.
 
 <?., the general election in ¡November of the year next preceding. Now let us view the facts. At the adoption of the article, ¡Mr. Justice Rosekrans could continue in office during the term for which he had been elected and upon which he was then serving. On the expiration of that term, on the 31st of December, 1871, by a general and commanding provision of the article, a new term of fourteen years was to begin, and an incumbent for it, a successor to Mi-. Justice Rosekrans, was to be chosen by the electors of the district, and at the general election in November, 1871, and to take his office on the 1st day of January, 1872.
 

 These provisions of sections 6 and 13 are as explicit, and why not as rigid and inflexible, in their language and command as those of section 9 ? All cannot stand or be enforced together. Which shall yield or adapt themselves to the other ? Clearly those which provide for a need occasional and temporary should give way to those which are of usual and continuous and imperious operation, and make a part of the essential framework of the general plan.
 

 And so of the last sentence in section 9 : “ Any such appointment shall continue until and including the last day of Decern' her next after the election at which the vacancy shall be filled.” Cases can be supposed in which this provision may have its full scope without conflicting with any other part of the article. Thus, if Mr. Justice Rosekrans’ term would have expired on the last day of December, 1872, and his resignation had taken place as it did in fact, there would have been no hostility in the prescribed action of all parts of the article. The Governor would have appointed to fill the vacancy, and the term of his appointee would have continued until and including the last day of December next after the election in Novem
 
 *385
 
 ber, 1872 At that election the electors of the fourth judicial district would have chosen a successor for a full term of fourteen years, which would have commenced on the first day of January next after his election. Thus it is seen that the provisions of the ninth section are not nugatory, though held to wait upon those of the sixth and thirteenth sections.
 

 They anticipate a case which may happen, and they prepare for it. But to give them controlling operation in the ease in hand is to disregard or suspend the provisions of sections 6 and 13 above quoted. The ninth section must yield to those sections, for they are of the general scope and intent of the instrument, and provide for what will of a certainty arrive in the usual course of events, while it is for a special purpose, and looks but to an exigency, uncertain of occurrance and temporary. It is not blotted out, but being prepared for a contingency, and for a contingency only, it must abide in subserviency until the exact contingency approaches to meet which it is needed.
 

 The language of the section is: “ When a vancancy shall occur, otherwise than by expiration of term in the office of Justice of the Supreme Court.” Such a vacancy as here provided for can occur only before the expiration of the term of office, as that term has been by Constitution and the laws beforehand fixed. It can occur only in one of the seven ways provided for by the statute (R. S. above cited). To create a vacancy the incumbent of the term not yet expired, and in which the vacancy is to be created, must before the expiration of the term of said office, 1st, die; or 2d, resign; or 3d, be removed; or 4th, cease to inhabit the district; or 5th, be convicted of crime ; or 6th, refuse to take the oath of office; or 7th, be removed by judicial decision.
 

 The words used in the statute, “before the expiration of the term of such office,” though they are but words of caution, still make more clear the meaning and intent. It is plain, as an abstract proposition apart from the words of any provision in regard thereto, that no vacancy can be wrought in an office by the act or fault of an incumbent after the expi
 
 *386
 
 ration of the term for which he was at first pntitled to hold it. And equally plain is it as an abstract proposition, that by no act or fault of his, while holding the office and before the expiration of his term thereof, can there be created a vacancy in the office during the term of a successor regularly chosen. And yet in strictness such is the proposition argued for the appellant.
 

 It is claimed that by the resignation of Hr. Justice Bosekrans, not only has he created a vacancy in the office during the remainder of the term for which he was entitled to hold it, but that the effect of his resignation is thrown forward and has created a vacancy in a term next succeeding his ; a term existing in exact and literal accordance with domineering provisions of the Constitution and of the laws, and to which the privileged electors have chosen an incumbent now living, and who has qualified. Hr. Justice Bosekrans could not resign that which he did not hold. He did not hold, nor was he entitled to hold, the term beginning 1st January, 1872, nor any part thereof. He could not then resign that term nor any part of it.
 

 Hence the resignation which he made could create no vacancy in the office for that term or any part thereof. Hence there was no vacancy in the office for that term to be filled, nor for any part thereof. The vacancy which he did create was for the remainder of his unexpired term, and for no other time. This was the vacancy to be filled and no other. And when the power conferred by the ninth section of the judiciary article is invoked to fill that vacancy, however great the abstract extent of the power, as the language in which it is conferred is separately considered, it is limited in its practical exercise in the particular case by the constraining force of other parts of the article to the exact object to be accomplished, as that object is made specific by the facts of that particular case. In the case in hand, that exact object was to fill a vacancy beginning 6th of November, 1871, in an office the regular term of which was unexpired, but which would expire on the 31st of December of that year.
 

 
 *387
 
 The Governor had the right to fill this vacancy by appointment, inasmuch as it occurred less than three months before the then next general election. Thus one of the methods of filling the vacancy was operative. The other, by all the facts of the case, was not and never could be. For before the next general election, happening not less than three months after the vacancy occurred, no vacancy would exist in the office. Prior thereto, the other provisions of the article equally entitled to have effect, had in their prescribed operation, conspired to create a full term in which there has been no vacancy to fill.
 

 And when we consider another rule the same result is arrived at. And that is the rule that the evil sought to be prevented is to be ascertained, and the new enactment adopted for its correction is to be read in view thereof. And though this rule is generally invoked in aid of a liberal construction of the statute, so that the remedy intended may be secured, yet it is based upon the idea of arriving at the intention of the Legislature, by considering what was in its contemplation when the law was enacted. And it is equally rational to recur thereto to prevent a stretching of the law beyond the remedy and so beyond the intention, as it is to bring it up to the full measure of the proposed relief.
 

 H ow as we have said, the evil apprehended was the coming into judicial office to fill a vacancy in it occurring just before an election, at which it could by the Constitution be filled, of one chosen by but a few of the electors better apprised of the opportunity than the great body of their peers. The remedy was to forbid an election to fill a fortuitous vacancy until, such time had elapsed after it happened, as that a knowledge of the occasion should be spread abroad and generally acted upon. And keeping in view the desire to avoid fractional terms, there was blended a provision that when an election in the order of the article took place, it should be for a full term.
 

 How to construe this as resulting in the possibility of an unlimited series of fractional terms, and a complete ignoring of the elective tenure of the judicial office, is manifestly we
 
 *388
 
 think a diversion to another purpose of the work of the framers of the article. It is an avoidance of the directions of the sixth and thirteenth sections to an extent which without violence to settled rules of construction, may be repelled.
 

 The words
 
 “
 
 any vacancy ” in the phrase
 
 “
 
 until any vacancy shall be so filled,” in the ninth section, have been somewhat relied upon as extending the meaning of the first part of the section. It does not appear to us that they convey any other meaning than the words “ the vacancy ” in a similar connection in the third section. In both cases they refer and are confined to the vacancy spoken of in the prior clauses of the section.
 

 To sum up our views : We conceive that the whole article must be read together; that each must be made to act in unison with each other part; that where there is conflict, that which provides for a contingency must be held to be subservient to those which provide for the general purpose, and for events sure to occur at stated intervals; that it is apparent that the general plan is for full terms of fourteen years each, in the office of Justice of the Supreme Court; that these terms shall be provided for by the choice of the electors at a general election next preceding the expiration of a full term; that the term shall begin on the first day of January next after such general election; that, when a vacancy occurs by reason of any of the events designated in the statute, such vacancy can, in no case exist longer than the term in which it occurs ; that when it occurs more than three months before a general election, if it would exist beyond or into the then next political year, it shall be filled thereat, and the person chosen shall have a full term of fourteen years, beginning on the first day of January next thereafter; that when a vacancy occurs by such reason less than three months before a general election, the Governor, or the Governor and Senate, may fill it until and including the last day of December next after such election, if the vacancy be one to be filled by election, or until the last day of December next after the appointment, if it be a vacancy .occurring in a term which itself expires on that day.
 

 
 *389
 
 In our judgment, this construction of the article and its several parts gives to each part its due force. It annuls none and confines none in its operation, save to the general or particular case to meet which it was provided. It foresees as sure to arise from time to time the occasions when what we have termed the general provisions of the article will do their allotted work, and as likely sooner or later to arise, the different exigencies when what we have termed the particular provisions must be relied upon and used to save the public service from embarrassment.
 

 It follows from these considerations that the resignation of Hr. Justice Rosekrans created a vacancy in the office of Justice of the Supreme Court for the fourth judicial district, no longer than from the day of his resignation until and including the last day of December, 1871; that the appointment by the Governor could be for that space of time and no longer; that the right of Hr. Justice Jackson to that office ended on the day last named; and that the respondent, Joseph Potter, is a constitutional and legal Justice of the Supreme Court for the fourth judicial district, for the term of fourteen years, beginning on the first day of January, A. D. 1872.
 

 Therefore, the judgment of the General Term appealed from should be affirmed.
 

 All concur.
 

 Judgment affirmed.