ROGERS *v.* CITY OF BUFFALO *et al.*

*(Supreme Court, Special Term, Erie County.*  December 15, 1888.)

1. OFFICE AND OFFICER—APPOINTMENT—CIVIL SERVICE LAWS—STREET INSPECTORS.
   An inspector of streets of the city of Buffalo, appointed on the nomination of the street commissioners, and named in the charter as a city officer, is not a laborer or workman, within the meaning of the civil service laws.

2. SAME—SUBORDINATE OFFICERS—CITY OF BUFFALO.
   Rule 2 of the civil service rules and regulations of the city of Buffalo provides that the subordinates of an officer elected by the people, and for whose errors or violation of duty such officer is financially responsible, shall not be subject to the regulations. The appointment of inspectors of health and streets is made compulsory upon the street commissioner, but he has no power therein, except with the consent of the council. The inspectors are named in the charter as city officers. *Held,* that they are not agents or employes of the street commissioner, hence he is not liable for their neglect or misconduct, and they do not come under the exception in rule 2.

3. SAME—INTENTION OF LEGISLATURE.
   The fact that the council is vested with power to reject an applicant nominated for the office of street inspector, and that, if it saw fit, it might even reject an indefinite number of duly qualified applicants, does not indicate that the legislature did not intend the civil service rules to apply to such officers.

4. SAME—CONSTITUTIONAL LAW.
   Compelling an applicant to comply with the civil service rules is not requiring an additional test, within the meaning of Const. N. Y. art. 12, § 1, providing a form of oath to be taken by judicial and executive officers, and declaring that "no other oath, declaration, or test shall be required as a qualification for any office of public trust."

Action by Sherman S. Rogers, to prevent the city of Buffalo from paying any part of the salary claimed by defendant Ceriac Diebolt as street and health inspector. For former report, see 2 N. Y. Supp. 326. For affirmance on appeal, see *post,* 674.

*Almy & Keep* and *Ansley Wilcox,* for plaintiff.  *Wm. F. Sheehan,* for defendant Diebolt.

LEWIS, J. This action is brought under section 1925 of the Code of Civil Procedure, against the city of Buffalo and the other officers thereof, who have to do with the paying of the salaries of persons in the service of the city, to obtain a judgment restraining the payment of the salary of Ceriac Diebolt, as health and street inspector of the city, upon the claim that the appointment of Diebolt as health and street inspector was illegal, because in violation of the civil service laws and regulations of the state. Pursuant to the provisions of the statutes of the state known as the "Civil Service Acts," the mayor of Buffalo, prior to the times hereafter mentioned, prescribed and published rules and regulations for the admission of persons into the civil service of the city. These rules applied to all persons in the public service of the city, ex-

cept such officers as were elected by the people, the subordinates of such officers, for whose errors or violation of duty such officer is financially responsible, except laborers or day-workmen, and others not necessary to mention for the purposes of the case. The defendant Quinn, on the 2d day of January, 1888, entered into the office of street commissioner of the city of Buffalo, having been duly elected thereto; and, by the provisions of the city charter, it was made his duty as such commissioner to appoint such inspectors of health and streets as the common council should authorize. Such appointments were to be made by and with the advice and consent of the common council. Soon after assuming his office, he did appoint 13 persons, including the defendant Diebolt, to fill vacancies then existing in such offices. These appointments were made without the civil service rules and regulations having been complied with. The common council confirmed the appointments. Difficulties having arisen in these officers' obtaining pay for their services, because the legality of their appointments was questioned, they resigned their offices, and thereafter some efforts appear to have been made by the commissioner to comply with the civil service laws and regulations in making appointments to fill these offices permanently, the particulars of which it is not necessary to mention here; but, not meeting with much encouragement from the common council, he did, on the 4th day of September, 1888, make permanent appointments to the positions of street and health inspectors of nine persons in the place and stead of the defendant Diebolt and eight other persons who were then holding such offices as temporary appointees, and as such permanent appointees he named the defendant Diebolt and eight other persons. The persons so designated, and particularly the defendant Diebolt, had not passed any civil service examination, or in any manner complied with the state civil service rules, and had not been certified to said street commissioner in any manner as having complied with said rules, and as persons who were eligible for such appointments. The common council, on said 4th day of September, confirmed the appointments of Diebolt and eight other persons as permanent appointments to such positions of street and health inspectors of the city, and thereupon this action was begun by the plaintiff, who is a resident, citizen, and tax-payer, under section 1925, which provides for an action to obtain a judgment preventing waste of, or injury to, the estate, funds, or property of a city by a citizen therein, who is assessed for and is liable to pay a tax therein.

The defendant Diebolt defends the action, and claims that his office is not subject to the civil service laws of the state, and cannot be classified under the civil service regulations, for the reasons—*First*, that he is a subordinate of the street commissioner, who is an officer elected by the people, and financially responsible for the acts of defendant Diebolt as inspector; *second*, that the duties of the office of health and street inspector are those of a laborer or workman, simply; *third*, that, the common council being vested with the power to confirm or reject appointments, therefore the civil service laws have no application to officers subject to their confirmation or rejection; *fourth*, that if a health and street inspector is not a laborer or workman, but an officer of the city, then he is not exempt from taking the constitutional oath of office, and, as the constitution provides the form of oath to be taken, and further provides that no other oath, declaration, or test shall be required as a qualification for any office of public trust, the civil service rules and regulations cannot be held to apply to that office. I am, in disposing of this case, required to decide whether the office of health and street inspector of the city of Buffalo comes within the civil service rules and regulations promulgated by the mayor. It is provided by rule No. 2 of the civil service rules and regulations that the subordinates of an officer elected by the people, and for whose errors or violation of duty such officer is financially responsible, shall not be subject to the regulations in question. The health and street inspectors are probably subordinates of the commissioner, but is he financially responsible

for their acts? The street commissioner is an officer of the city, elected by the people, removable by the mayor. He and the inspectors are alike paid for their services by the city. The appointment of these inspectors is made compulsory upon the commissioner. While he nominates them, he has no power, without the consent of the council, to appoint them. They hold their office during the pleasure of the power appointing them. The city is responsible, as their principal, for their official acts. They are agents of the city, and are responsible to the city for the due discharge of their duties; and, while the commissioner is at the head of the department of which they are officers, and they are subordinate to him, still they are officers of the city, and are included within title 2 of the charter, which is devoted to the officers of the city, and to no other subject-matter. It cannot be said that they are in any sense agents or employes of the commissioner; and, not being his agents or employes, it must be held, upon principle and authority, that the commissioner is not financially responsible for their neglect or misconduct. See *Walsh* v. *Trustees,* 96 N. Y. 436. It was so held by Justice DANIELS, (2 N. Y. Supp. 326,) in disposing of a motion made in this case to continue a temporary injunction, and it was further held by Justice DANIELS that the commissioner was not liable for the actions of the inspectors because of anything contained in the bond the charter requires the commissioner to give.

Are the duties of the office of health and street inspector those of a laborer or workman in the sense those words are used in the civil service laws? In some sense, every one following an occupation or calling is a laborer or workman, but these words are used in this statute to distinguish between persons who work with their hands, performing manual labor simply, without having supervision over, or responsibility for, others' acts,—persons who have their tasks assigned to them by another,—and those engaged in occupations not requiring manual labor, but simply the use of their minds and judgments, the management of others, or the direction of affairs. The official name of Diebolt's office, "Inspector of Health and Streets," indicates that he is not a laborer or workman in the popular sense in which these words are used. His duty is to inspect the streets and other parts of the city for sanitary purposes, and to see that the streets, alleys, etc., are in a safe and proper condition for the use of the public. Their duties are of a higher order than the common laborer, calling for a greater degree of discretion and intelligence. It is suggested by defendant's counsel that there is nothing in the charter specifically defining their duties; nothing to prevent the street commissioner from assigning them to work with the shovel or the hoe, cleaning the streets. I think the reasons already suggested preclude their being assigned to such menial service.

It is further claimed that the civil service rules do not apply to this office because the charter provides that the council may reject an applicant nominated for the office; and defendant suggests that, possessing that power, the council may continue to reject the nominations of those certified by the civil service commissioners as being qualified for the office, and thereby they may prevent the filling of the places, and that therefore it could not have been the intention of the legislature that the civil service rules and regulations should apply to that office. It is scarcely a supposable case that the council would conduct themselves thus arbitrarily and unreasonably; but the same embarrassments might exist if the civil service rules had not been adopted, for the common council has the power, under the charter, to refuse to confirm any nominations that might be sent to it by the street commissioner.

The fourth defense is that article 12 of the constitution of the state provides that "all officers, executive and judicial, except such inferior officers as shall be by law exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear that I will support the constitution of the United States and

the constitution of the state of New York, and that I will faithfully discharge the duties of the office of ——— according to the best of my ability;'" and further provides that "no other oath, declaration, or test shall be required as a qualification for any office of public trust." Defendant claims that Diebolt was not exempted by law from taking this oath; that he did in fact take the oath, and therefore compelling him to comply with the civil service rules and regulations was requiring a test prohibited by the constitution. It is quite apparent that it would not be proper, in construing this provision of the constitution, to give to the word "test" its broad and popular meaning; for such a construction would lead to great absurdities. There is nothing in the constitutional oath as to the age, residence, citizenship, or sex of the affiant. But article 4 of the constitution requires that, to be eligible to the office of governor or lieutenant governor, a person must be a citizen of the United States, not less than 30 years of age, and shall have been for five years next preceding his election a resident of this state. The state engineer and surveyor must be a practical engineer. These are certainly tests for office outside and beyond the requirements of the constitutional oath. It could not have been the intention of the framers of the constitution that this word should have the broad signification contended for by defendant's counsel. "The intent of the law-maker is to be sought for, and, when discovered, is to prevail over the literal meaning of the words of any part of the law." People v. Potter, 47 N. Y. 375; People v. Angle, 109 N. Y. 568, 17 N. E. Rep. 413. This word "test," as used in this section of the constitution, should be given the more restricted or narrower meaning. Its use in the section was evidently intended to prevent the subjection of an official to any ordeal to ascertain his political, religious, or social views. It was probably incorporated into the constitution because of the obnoxious test oaths to which the civil and military officials were subjected under the English laws; its being used in connection with the words "oath or declaration" is evidence that it was intended to have a restricted meaning. My conclusion is that Mr. Diebolt was not legally appointed to the office of health and street inspector, and hence not entitled to pay for his services as such. The plaintiff is entitled to judgment against the defendants, enjoining and restraining the defendants, or either of them, from drawing or authorizing any warrant to be drawn to pay the salary of the defendant Diebolt as street and health inspector of the city, or to pay any compensation to him for services alleged to be rendered in such office, or from paying his salary as such inspector, or from creating any liability on the part of the city to said Diebolt for such services.