33 N.Y.2d 357 (1974)
In the Matter of John Taylor et al., Appellants,
v.
Robert J. Sise et al., Respondents.
In the Matter of Benjamin Cullum et al., Appellants,
v.
John F. O'Mara et al., Respondents.
Court of Appeals of the State of New York.
Argued January 18, 1974.
Decided February 12, 1974.
Robert Hermann, William Gallagher, Randolph Jonakait, John Stackhouse and Donald Zeigler for John Taylor, appellants.
Mark C. Morril, Elizabeth B. DuBois and Barry Krinsky for Benjamin Cullum, appellants.
Louis J. Lefkowitz, Attorney-General (Irving Galt and A. Seth Greenwald of counsel), for respondents.
Maurice N. Nessen for the New York County Lawyers' Association, amicus curiae.
Matthew J. Mallow, Stephen B. Camhi and Jeffrey Newman for The Association of the Bar of the City of New York, amicus curiae.
Judges GABRIELLI, JONES, WACHTLER, STALEY[*] and SWEENEY[*] concur with Chief Judge BREITEL; Judge JASEN dissents and votes to reverse in a separate opinion.
*361 Chief Judge BREITEL.
Petitioners appeal as of right (CPLR 5601, subd. [b], par. 1) from a judgment by the Appellate Division dismissing two proceedings under CPLR article 78 challenging the constitutionality of certain provisions of the Emergency Dangerous Drug Control Act (L. 1973, ch. 603).
Petitioners stand indicted for drug felonies and are scheduled for trial before respondents, acting Supreme Court Justices, so designated by the Appellate Division, after their appointment by Governor Rockefeller to the Court of Claims. There are two groups of petitioners, each challenging on constitutional grounds the respondent acting Justices' legal authority to preside at their felony trials. The Taylor group challenges the constitutionality of that portion of the legislation increasing the number of Judges sitting on the Court of Claims, the Governor's appointment of the Judges, and the Appellate Division's designation of those appointed as acting Supreme Court Justices. The Cullum group makes a similar challenge and, in addition, alleges that in requiring participation by the executive branch of government in proposing a plan for the efficient use of judicial resources, chapter 603 violates the constitutional doctrine of separation of powers.
Governor Rockefeller's 1973 annual message to the Legislature called for stricter penalties for drug offenses and stringent limitations on acceptances of lesser pleas to higher crimes charged. The drug bill passed both houses of the Legislature and was signed into law by the Governor on June 11, 1973 (L. 1973, ch. 603). The bill amended section 140-a of the *362 Judiciary Law by increasing the number of Supreme Court Justices in each of the State's 11 Judicial Districts, except for the First and Second Judicial Districts, increasing the number of Judges in certain other courts, and authorizing the appointment of up to 68 additional Judges of the Court of Claims, with nine-year terms as provided in the Constitution (art. VI, § 9). The legislation provided that the additional judgeships were not subject to succession upon expiration of the nine-year period or upon vacancies arising from any other cause.
It is not disputed that the purpose of the legislation was to provide additional Judges to preside over a widely-anticipated increase in dangerous drug felony prosecutions as the result of the new law. To date, the 16 additional Court of Claims Judges appointed have been assigned to criminal parts of the Supreme Court by the appropriate Appellate Division.
The Attorney-General contests petitioners' standing to challenge the constitutionality of the appointment and designation of those Judges who are to preside at their trials. The challenged legislation directly affects petitioners by providing the legal basis for the Trial Judges' authority to preside at their trials. Petitioners' interest in the constitutionality of the legislation is therefore not abstract but personal, direct and substantial, conferring standing to challenge the respondents' authority to preside at petitioners' trials (see Schieffelin v. Komfort, 212 N.Y. 520, 530).
The Cullum claim regarding the statutory authority conferred upon the Commissioner of the Division of Criminal Justice Services is of a different kind. The legislation provides that the Commissioner, an executive appointee, along with the State Administrator of the Courts, a judicial appointee, are to prepare jointly a plan for effective and efficient use of existing judicial resources and those resources made available by the new legislation (L. 1973, ch. 603, § 1). This provision is challenged as violating the constitutional doctrine of separation of powers. The appellants are not directly affected by this provision to afford them standing to challenge its constitutionality (see St. Clair v. Yonkers Raceway, 13 N Y 2d 72, 76). Nor will the constitutional question presented affect the validity of any orders or judgments of the acting Supreme Court Justices to warrant *363 this court's consideration in the absence of standing (compare Matter of Spillane v. Katz, 25 N Y 2d 34, 36).
Section 9 of article VI of the Constitution, provides that the Court of Claims "shall consist of the eight judges now authorized by law, but the legislature may increase such number". The language of this provision is explicit and unambiguous in granting the Legislature power and, under long-established rules of construction, the court is generally precluded from looking elsewhere for its meaning and the scope of the power conferred (People v. Carroll, 3 N Y 2d 686, 689-690; see, also, Newell v. People, 7 N.Y. 9, 97).
The Legislature without express qualification by purpose, is authorized to increase the number of Court of Claims Judges (N. Y. Const., art. VI, § 9). It is of no legal or practical consequence that it set an outer limit of 68 new Judges rather than fixing the number at that figure. The Governor is limited in the number of Judges to be appointed and each appointment is subject to confirmation by the Senate as required by the Constitution (L. 1973, ch. 603, § 1; N. Y. Const., art. VI, § 9).
The Constitution provides for election of Supreme Court Justices by electors of the judicial district in which they are to serve (art. VI, § 6, subd. c) and further provides that in New York City the Supreme Court has "exclusive jurisdiction over crimes prosecuted by indictment" (art. VI, § 7, subd. a). Because of these provisions, petitioners argue that the Constitution guarantees to a person under indictment for a felony in New York City that the Trial Judge will be a properly elected Supreme Court Justice.
While this argument has appeal it fails to conclude the issue. The same Constitution authorizes the temporary assignment of a Judge of the New York City Criminal Court (art. VI, § 26, subd. g) as well as a Judge of the Court of Claims (art. VI, § 26, subd. b) to the Supreme Court. There is nothing in the Constitution which precludes any Judge so assigned from sitting on a felony trial. On the contrary, the Constitution provides that "[w]hile temporarily assigned pursuant to the provisions of [section 26], any judge or justice shall have the powers, duties and jurisdiction of a judge or justice of the court to which assigned" (N. Y. Const., art. VI, § 26, subd. k). These provisions support the conclusion that, rather than providing *364 a defendant with a right to trial by an elected Judge, the constitutional provision requiring election of Supreme Court Justices is merely the method by which the State has decided to choose its regular Supreme Court Justices. Nothing, therefore, in the Constitution guarantees a defendant charged with a felony in New York City the right to be tried before an elected rather than an appointed acting Supreme Court Justice.
Because the Constitution authorizes only the temporary assignment of Court of Claims Judges, petitioners urge that the statutory device is invalid. Neither the Legislature nor the Governor had the power to assign any of the Court of Claims Judges to the Supreme Court. It is only the Appellate Division which has the power to assign to the Supreme Court a Judge of the Court of Claims (N. Y. Const., art. VI, § 26, subd. i). That same Appellate Division must determine whether additional Judges are necessary and which Judges should be assigned.
The Appellate Division order in the instant case designates the respondents to act as Supreme Court Justices in the criminal term "until the further order of this Court." The order does not specify that the assignment shall continue for the Judges' nine-year terms, but rather, in effect, such assignment continues until the designating court determines their services are no longer necessary. This order is thus designed to accomplish the very purpose of the constitutional requirement of a temporary assignment. That is, there is a present certified need for additional Supreme Court Justices and when that need is no longer present the designating order would presumably be revoked. In this context, the indefiniteness of the assignment is equivalent to a temporary designation.
The Legislature agreed with the judicially-expressed concern that the stricter sentences and limitations on the acceptance of lesser pleas to higher crimes charged in the new drug law created an emergency need for additional Judges. There is generally a very strong presumption that "the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation" (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40). More specifically, the situation under consideration affirmatively demonstrates that the Legislature responded to a then generally *365 acknowledged need for more Judges to handle the consequences of the new drug law. Assuming that there were other effective methods by which to accomplish the same end, this court should not substitute its judgment for that of the Legislature in determining the particular method to meet a given need (Nettleton Co. v. Diamond, 27 N Y 2d 182, 194; see, also, Wasmuth v. Allen, 14 N Y 2d 391, 398).
Petitioners have cogently presented the view that the device used to increase the number of Judges to try felony cases has the effect of minimizing whatever purpose is made evident in the Constitution to provide for an elective Supreme Court to try such cases, except in exigent and temporary circumstances. Nevertheless, this cross-working of purposes is not equivalent to an ambiguity or conflict in the grant of constitutional powers which requires a court to look beyond the literal language and narrow or restrict the otherwise unqualified grant of power, present in this case.
Petitioners particularly urge upon the court the holding and reasoning in People ex rel. Jackson v. Potter (47 N.Y. 375), a case which certainly supports the proposition that in construing a constitutional provision involving a grant of executive or legislative power, all relevant parts of the Constitution must be considered. The reasoning is unexceptionable. In that case, however, unlike this case, the court was confronted with the need to reconcile two inconsistent provisions both of which could not have been accorded literal effect in the fact situation there presented. Indeed, an intolerable mischief would have been worked by the literal application of one provision while ignoring the other. There was therefore a patent conflict of purpose which would have produced an anomalous result (compare, however, People v. Carroll, 3 N Y 2d 686, 689-690, supra). Consequently, the court was required to reconcile the provisions which could only be accomplished by an extrinsic examination of purpose, effect, and contemporaneous statutes. Moreover, the present case involves determination of the constitutionality of a statute, an aspect not present in the Jackson case.
Finally, petitioners' contention that the acting Supreme Court Justices are likely to be partial or subject to improper executive influence is unacceptable. Given the validity of the statute, the argument becomes irrelevant.
*366 The Legislature exercised its constitutional power and expanded the possible number of Judges on the Court of Claims; the Governor exercised his constitutional power and appointed 16 Judges of the Court of Claims; and the Appellate Division exercised its constitutional power and designated some of these Judges to act as Supreme Court Justices. There is no constitutional infirmity in the actions of any of the three branches of government.
The judgments of the Appellate Division should be affirmed.
JASEN, J. (dissenting).
Section 7 of chapter 603 of the Laws of 1973 provides for the appointment by the Governor of 68 additional Court of Claims Judges for the avowed purpose of staffing criminal parts of the Supreme Court, by constitutional provision, an elective Bench. Section 1 of the statute directs that an executive appointee shall partake in the preparation and implementation of a plan for the application of existing and such additional judicial resources as are made available under the act, a function exclusively reserved to the judiciary by the Constitution.
In my judgment, this legislation evades the terms and violates the spirit of the judicial article of the State Constitution. It attempts indirectly what could not be done directly  the appointment of Supreme Court Justices  and is to that extent void. (Cf. People ex rel. Burby v. Howland, 155 N.Y. 270, 280-281; People ex rel. Bolton v. Albertson, 55 N.Y. 50, 55; People ex rel. Jackson v. Potter, 47 N.Y. 375; State ex rel. Pierce v. Kundert, 4 Wis. 2d 392.) Moreover, it undermines the fundamental constitutional principle of separation of powers and marks an unprecedented encroachment by the legislative and executive branches upon functions assigned to the judiciary by the Constitution. (Cf. People ex rel. Burby v. Howland, supra.) Clearly, it assaults the very integrity of the judicial article by artful manipulation of its terms and arrogates power to the executive in derogation of the independence of the judiciary. It is blatantly unconstitutional and should be so declared by this court.
Assuming there is a need for additional Supreme Court Justices to conduct felony trials arising under the new drug laws  and the evidence is not all that apparent  the Constitution *367 provides a method for creating such additional Judges. (N. Y. Const., art. VI, § 6, subd. d.) The Legislature may increase the number of Supreme Court Justices in any judicial district by the ratio of one per 50,000 population. We are advised that within the Second Department, for example, under the constitutional formula, the number of Supreme Court Justices could be increased by 19 or 20. For various reasons, this procedure has been rejected as inappropriate, although it is the constitutionally prescribed method for increasing the number of Supreme Court Justices. That it may not have been workable in this situation cannot save the legislation in question. If another more flexible procedure is needed for increasing the number of temporary or permanent Supreme Court Justices to deal with sudden increases in the business of that court, a constitutional amendment would be required.
In addition, the spirit, if not the letter, of section 9 of article VI is evaded. The Constitution provides that the Legislature may increase the number of Judges of the Court of Claims but that such number shall not be reduced to less than six or seven. It may be argued that the constitutional authorization to increase the number of Court of Claims Judges is unambiguous on its face and that the courts may not go behind it to discern intent. But within the same section is defined the jurisdiction of that court  to hear and determine claims by and against the State and between rival claimants. A reasonable interpretation is that the Legislature is authorized to increase the number of Judges on the Court of Claims for the purpose of permitting it to respond in changing times and circumstances to the increasing business before that court.
Other sections of the judiciary article contain analogous provisions for increasing the number of Judges on a particular court. For example, section 4 contains a provision for increasing the number of Justices in any Appellate Division when it is certified that "one or more justices are needed for the speedy disposition of the business before it." (Emphasis added.) Section 2, dealing with this court, contains a similar provision. In each of these cited examples, the increase in Judges is explicitly tied to an increase in the business of that court. Although the language of section 9 is not so expressly limited, nothing in the history of this section suggests a different purpose. *368 Indeed, reading the statement of jurisdiction found in the same section, in conjunction with the power to increase the Court of Claims, a similar qualification on that power is necessarily implied. Here there is no pretense that the press of business before that court necessitates an additional 68 Judges. The whole legislative debate on chapter 603, as well as the fact that within the same enactment the permanent Bench of the Court of Claims was increased by only one Judge, establish a contrary conclusion. It follows that the expansion of the Court of Claims, wholly unrelated to the business of that court, is void as violative of section 9 of article VI.
Even assuming the validity of the authorization of 68 additional Court of Claims Judges and the appointments pursuant thereto, assignment of the respondent Judges to the Supreme Court violates subdivision g of section 26 of article VI. There it is provided that a Judge of the Court of Claims may be "temporarily assigned" to the Supreme Court. Pursuant to this section, the Appellate Division has assigned the respondent Judges to the Supreme Court, Kings County, "until the further order of [the Appellate Division]." But respondent Judges have been appointed to nine-year terms. The scheme of chapter 603 contemplates that they will serve by assignment exclusively in the Supreme Court and presumably for their full terms. By no stretch of the imagination can they be deemed on "temporary" assignment to the Supreme Court within the intendment of subdivision g of section 26.
The majority, however, emphasizes that such assignments shall continue only until the Appellate Division determines they are no longer needed, and, therefore, they say, the assignments are "temporary" within the meaning of the Constitution. In my view this analysis does not come to grips with the realities of the statutory device and its avowed purposes.
Turning now to the claim of the petitioners in the Cullum proceeding that section 1 of chapter 603 is unconstitutional as it violates the constitutional doctrine of separation of powers, I disagree with the majority that the petitioners are not directly affected by this provision and, therefore, lack a litigable interest.
The concept of "standing" derives essentially from principles of judicial self-restraint and the policy against adjudication of constitutional issues which need not be reached in *369 determining the rights of the particular litigants before the court. But where a fundamental constitutional question is raised and full and fair exposition of the issues is assured, it should not be consigned to limbo, unacknowledged and undecided. (Cf. Matter of Spillane v. Katz, 25 N Y 2d 34, 36.)
The constitutional issue raised by petitioners certainly qualifies as fundamental. It cuts to the heart of our constitutional system of government which rests upon the independence of each of its three branches and the even balance of power between them. The issues have been fully and fairly presented to us. No one would contend that this lawsuit is nonadversary. Petitioners' interest in the outcome is not abstract. Traditional notions of standing, of more relevance in other contexts, should not bar adjudication of this claim.
Passing to the merits, then, the argument for reversal is persuasive and well founded in principles of constitutional law. Section 28 of article VI reposes in the Administrative Board of the Judicial Conference the power to administer the unified court system. This constitutional grant of power may not be altered or infringed in any way by the Legislature. Section 1 does just what the Constitution by necessary implication prohibits. It empowers an executive appointee, the Commissioner of the Division of Criminal Justice Services, in conjunction with a judicial appointee, the State Administrator of the Courts, to devise a plan for the effective use of judicial resources  a clear case of overreaching by the executive branch of government. "It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others." (People ex rel. Burby v. Howland, 155 N.Y. 270, 282, supra.) The conclusion is inescapable that section 1 abridges the constitutional power of the judiciary over its own house, contravenes the doctrine of separation of powers and is unconstitutional.
In sum, there is an integrity about the judiciary article of the State Constitution which is violated by sections 1 and 7 of chapter 603. One would have thought that, however praiseworthy the desired end, manipulation of the Court of Claims was forever consigned to the past when in 1949 it became a constitutional court. The end pursued, however, cannot constitutionally justify the means selected, and for the reasons stated, *370 I would reverse the order of the Appellate Division, declare chapter 603 unconstitutional, and grant the relief requested.
In each case: Judgment affirmed, without costs.
NOTES
[*] Designated pursuant to section 2 of article VI of the State Constitution in place of RABIN and STEVENS, JJ.