Jasen, J.
(dissenting). Section 7 of chapter 603 of the Laws of 1973 provides for the appointment by the Governor of 68 additional Court of Claims Judges for the avowed purpose of staffing criminal parts of the Supreme Court, by constitutional provision, an elective Bench. Section 1 of the statute directs that an executive appointee shall partake in the preparation and implementation of a plan for the application of existing and such additional judicial resources as are made available under the act, a function exclusively reserved to the judiciary by the Constitution.
In my judgment, this legislation evades the terms and violates the spirit of the judicial article of the State Constitution. It attempts indirectly what could not be done directly — the appointment of Supreme Court Justices — and is to that extent void. (Cf. People ex rel. Burby v. Howland, 155 N. Y. 270, 280-281; People ex rel. Bolton v. Albertson, 55 N. Y. 50, 55; People ex rel. Jackson v. Potter, 47 N. Y. 375; State ex rel. Pierce v. Kundert, 4 Wis. 2d 392.) Moreover, it undermines the fundamental constitutional principle of separation of powers and marks an unprecedented encroachment by the legislative and executive branches upon functions assigned to the judiciary by the Constitution. (Cf. People ex rel. Burby v. Howland, supra.) Clearly, it assaults the very integrity of the judicial article by artful manipulation of its terms and arrogates power to the executive in derogation of the independence of the judiciary. It is blatantly unconstitutional and should be so declared by this court.
Assuming there is a need for additional Supreme Court Justices to conduct felony trials arising under the new drug laws — and the evidence is not all that apparent — the Constitution *367 provides a method for creating such additional Judges. (N. Y. Const., art. VI, § 6, subd. d.) The Legislature may increase the number of Supreme Court Justices in any judicial district by the ratio of one per 50,000 population. We are advised that within the Second Department, for example, under the constitutional formula, the number of Supreme Court Justices could be increased by 19 or 20. For various reasons, this procedure has been rejected as inappropriate, although it is the constitutionally prescribed method for increasing the number of Supreme Court Justices. That it may not have been workable in this situation cannot save the legislation in question. If another more flexible procedure is needed for increasing the number of temporary or permanent Supreme Court Justices to deal with sudden increases in the business of that court, a constitutional amendment would be required.
In addition, the spirit, if not the letter, of section 9 of article VI is evaded. The Constitution provides that the Legislature may increase the number of Judges of the Court of Claims but that such number shall not be reduced to less than six or seven. It may be argued that the constitutional authorization to increase the number of Court of Claims Judges is unambiguous on its face and that the courts may not go behind it to discern intent. But within the same section is defined the jurisdiction of that court — to hear and determine claims by and against the State and between rival claimants. A reasonable interpretation is that the Legislature is authorized to increase the number of Judges on the Court of Claims for the purpose of permitting it to respond in changing times and circumstances to the increasing business before that court.
Other sections of the judiciary article contain analogous provisions for increasing the number of Judges on a particular court. For example, section 4 contains a provision for increasing the number of Justices in any Appellate Division when it is certified that11 one or more justices are needed for the speedy disposition of the business before it.” (Emphasis added.) Section 2, dealing with this court, contains a similar provision. In each of these cited examples, the increase in Judges is explicitly tied to an increase in the business of that court. Although the language of section 9 is not so expressly limited, nothing in the history of this section suggests a different pur *368 pose. Indeed, reading the statement of jurisdiction found in the same section, in conjunction with the power to increase the Court of Claims, a similar qualification on that power is necessarily implied. Here there is no pretense that the press of business before that court necessitates an additional 68 Judges. The whole legislative debate on chapter 603, as well as the fact that within the same enactment the permanent Bench of the Court of Claims was increased by only one Judge, establish a contrary conclusion. It follows that the expansion of the Court of Claims, wholly unrelated to the business of that court, is void as violative of section 9 of article VT.
Even assuming the validity of the authorization of 68 additional Court of Claims Judges and the appointments pursuant thereto, assignment of the respondent Judges to the Supreme Court violates subdivision g of section 26 of article VI. There it is provided that a Judge of the Court of Claims may be “ temporarily assigned ” to the Supreme Court. Pursuant to this section, the Appellate Division has assigned the respondent Judges to the Supreme Court, Kings. County, “ until the further order of [the Appellate Division].” But respondent Judges have been appointed to nine-year terms. The scheme of chapter 603 contemplates that they will serve by assignment exclusively in the Supreme Court and presumably for their full terms. By no stretch of the imagination can they be deemed on “ temporary ” assignment to the Supreme Court within the intendment of subdivision g of section 26.
The majority, however, emphasizes that such assignments shall continue only until the Appellate Division determines they are no long'er needed, and, therefore, they say, the assignments are “ temporary ” within the meaning of the Constitution. In my view this analysis does not come to grips with the realities of the statutory device and its avowed purposes.
Turning now to the claim of. the petitioners in the Cullum proceeding that section 1 of chapter 603 is unconstitutional as it violates the constitutional doctrine of separation of powers, I disagree with the majority that the petitioners are not directly affected by this provision and, therefore, lack a litigable interest.
The concept of “ standing ” derives essentially from principles of judicial self-restraint and the policy against adjudication of 'constitutional issues which need not be reached in *369 determining the rights of the particular litigants before the court. But where a fundamental constitutional question is raised and full and fair exposition of the issues is assured, it should not be consigned to limbo, unacknowledged and undecided. (Cf. Matter of Spillane v. Katz, 25 N Y 2d 34, 36.)
The constitutional issue raised by petitioners certainly qualifies as fundamental. It cuts to the heart of our constitutional system of government which rests upon the independence of each of its three branches and the even balance of power between them. The issues have been fully and fairly presented to us. No one would contend that this lawsuit is nonadversary. Petitioners’ interest in the outcome is not abstract. Traditional notions of standing, of more relevance in other contexts, should not bar adjudication of this claim.
Passing to the merits, then, the argument for reversal is persuasive and well founded in principles of constitutional law. Section 28 of article VI reposes in the Administrative Board of the Judicial Conference the power to administer the unified court system. This constitutional grant of power may not be altered or infringed in any way by the Legislature. Section 1 does just what the Constitution by necessary implication prohibits. It empowers an executive appointee, the Commissioner of the Division of Criminal Justice Services, in conjunction with a judicial appointee, the State Administrator of the Courts, to devise a plan for the effective use of judicial resources — a clear case of overreaching by the executive branch of government. “ It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others.” (People ex rel. Burby v. Howland, 155 N. Y. 270, 282, supra.) The conclusion is inescapable that section 1 abridges the constitutional power of the judiciary over its own house, contravenes the doctrine of separation of powers and is unconstitutional.
In sum, there is an integrity about the judiciary article of the State Constitution which is violated by sections 1 and 7 of chapter 603. One would have thought that, however praiseworthy the desired end, manipulation of the Court of Claims was forever consigned to the past when in 1949 it became a constitutional court. The end pursued, however, cannot constitutionally justify the means selected, and for the reasons stated, *370 I would reverse the order of the Appellate Division, declare chapter 603 unconstitutional, and grant the relief requested.
Judges G-abrielli, Jones, Waohtler, Staley* and Sweeney* concur with Chief Judge Breitel ; Judge Jasen dissents and votes to reverse in a separate opinion.
In each case: Judgment affirmed, without costs.

 Designated pursuant to section 2 of article VI of the State Constitution in place of Rabin and Stevens, JJ.