OPINION OF THE COURT
Jasen, J.
Petitioner seeks to invalidate petitions designating Barry Hurowitz as a candidate for Civil Court Judge of the City of New York, Kings County, on the ground that his candidacy violates section 20 of article VI of the New York State Constitution. Judge Hurowitz is currently serving as á Judge of the Civil Court of the City of New York, Kings County. He was elected to that position in the general election of 1976 for a term of 10 years, commencing January 1, 1977. After serving less than half of his original term, he now seeks to be a candidate for a new full term of 10 years. Presumably, the Judge will resign from his current position in the event he is successful in the upcoming election.
*533 At issue on appeal is the effect to be given section 20 of article VI of the New York State Constitution which provides, in relevant part, that a Judge may not “be eligible to be a candidate for any public office other than judicial office or member of a constitutional convention unless he resigns his judicial office”. In support of his position to run for this vacancy, the Judge contends that a strict reading of section 20 authorizes his candidacy. It is his view that section 20 not only permits members of the judiciary to retain their positions while they pursue vacancies on other courts, but also sanctions sitting Judges whose terms have not yet expired to be candidates for identical positions on the same court. In our view, such an interpretation would frustrate the general purposes of article VI of the Constitution, thwart the electoral process and enhance the potential for public mischief.
It is a basic tenet of both constitutional and statutory construction that the general intent of an article or statute should govern the interpretation of any one part. “In the construction of a law, every part of it must be viewed in connection with the whole, so as to make if possible all its parts harmonious. (1 Kent, 462.)” (People ex rel. Jackson v Potter, 47 NY 375, 378.) We believe that the general intent of article VI of the Constitution, when read in its entirety, is to assure the public an independent and impartial judiciary. Indeed, in commenting upon this article, we have stated: “When the whole sixth (or judiciary) article of the Constitution is considered, certain purposes are clearly indicated. It was purposed to provide for the State a general and complete and continuous judicial system, and to create, or recognize and continue, all the judicial officers needed therefor, save those of inferior local courts. (§19.) It was designed that the general and * * * the exclusive mode of filling these offices * * * should be by election by the people, and not by appointment. (§§ 2, 13, 15, 16,18, 19.) And that that election should, for the officers of higher grade, be a general one, when it was more likely that the whole people would take part in it. It was conceived that the system to be supplanted was defective, in the short term of office it gave; and hence it was intended by the new *534 article, to create and secure a longer term, and to avoid fractions of terms. (Sections above cited, and §§ 3, 9, 12.) It was designed that one full term should follow directly after another full term, with no break of regular and connected succession. It was so arranged that these terms should end with one and begin with another and the next political year; whereby the" people and all their executive officers should know beforehand to take care for the expiration of a term, by provision to that end at the previous general election. (§§ 2, 13, 15.) For although this article does not in terms speak in these sections of the general election, yet a Constitution is to be held as prepared and adopted in reference to existing statutory laws, upon the provisions of which, in detail, it must depend to be set in practical operation. (Cass v. Dillon, 2 Ohio, N. S., 607; and see, per Walworth, Ch., in The People v. Mayor, etc., 25 Wend, 9-13; per Denio, Ch. J., in The People v. Draper, 15 N. Y., 532-537.) ” (People ex rel. Jackson v Potter, supra, at pp 379-380.) Hence, article VI was designed to assure a structured judiciary elected on a regular basis without fragmentation of terms. To accept this candidate’s interpretation of section 20 would defeat the over-all purposes of article VI. Such activities could fragment terms and create iterim vacancies on a regular basis, thereby infringing upon the people’s right to a “complete and continuous judicial system”. (People ex rel. Jackson v Potter, supra, at p 379.)
Futhermore, these provisions also seek to minimize the involvement of the judiciary in the political process and the possible influences such exposure might bring with it. (NY Temp Comm on Constitutional Convention, Pamphlet 12 [1967].) The type of conduct advocated in this case would repeatedly and unnecessarily permit members of the judiciary to enter the political process, thereby defeating the intent and purpose of article VI.
Similarly, it is incumbent upon this court not to allow “[a] public statute relating to the qualifications of public officers [to be] so construed as to produce inconvenience or to promote a public mischief or to render the action of the voters at the election abortive. It should, in every case *535 when the language will fairly permit, be given such a construction as to enable the electors to act intelligently, and to accomplish with as much certainty as practicable the purpose that they may have in view.” (People v Purdy, 154 NY 439, 442.)
In this case, the nature of the Judge’s candidacy could have the effect of aborting the election process. By seeking another position on the same court where he currently sits, he not only allows himself multiple chances to be re-elected, but also assures that when he is elected to the other position on the same court, a vacancy will occur. Such a vacancy creates an additional occasion for political involvement. Moreover, should this type of conduct become the norm, it would be possible that all positions would be appointive upon the resignations and shiftings of the other Judges; only at the next general election would the people be given a chance to vote, the effect of which may well be to merely approve the appointment. Although we do not find that this is currently the practice, the likelihood of such a result portends abuse of the elective system. Even viewed in its most favorable light, this conduct has the potential for “mischief” which this court cannot condone.
Not without significance in this connection is the risk of the appearance of impropriety that may be perceived by the public in a Judge’s injection of himself into the political process for the sole purpose of extending his tenure. (See Rules Governing Judicial Conduct, 22 NYCRR 33.2 33.7, 33.1.)*
For all these reasons, the orders of the Appellate Division should be reversed, without costs, the petitions to validate dismissed, and the petition to invalidate granted.

 These rules were approved by the Court of Appeals pursuant to authority under section 28 of article VI of the New York State Constitution.