Joseph Liff, J.
This article 78 proceeding to review respondent’s determination which denied petitioner’s request for reinstatement to the position of corrective speech teacher in the Island Park School District was referred to this court for hearing by Mr. Justice Albert in a memorandum decision dated March 6, 1975. In his decision he framed the issue to be determined by this court when he said: "In view of the conflict as to whether the two speech clinicians perform similar work as petitioner, a triable issue of fact has been presented, thus .necessitating a hearing [citations omitted]”.
*990 Petitioner was appointed as a corrective speech teacher in the Island Park School District in 1960 and was granted tenure in that position in September, 1963. By a letter dated April 21, 1971 from District Principal John F. Mineur, petitioner was notified that the respondent at its meeting on April 20, 1971 had voted to abolish her position at the close of the school year in June of that year. Respondent’s decision to eliminate petitioner’s position as well as others was "purely an economic one” due to rising costs. Thereafter, respondent offered petitioner a speech teaching position for 15 hours per week which she declined. From September, 1971 until early 1973 the Island Park School District employed a part-time speech teacher.
On April 2, 1973 respondent entered into an agreement with the Woodmere Center for Speech Disorders. The center undertook to provide the district with one part-time speech therapist for three hours per day for the remainder of the 1972-1973 school year. In August, 1973 the agreement was renewed for the school year 1973-1974. On March 12, 1974 the agreement for 1973-1974 was amended to provide for an "expansion of speech therapy services” by adding a second speech clinician who would also work 15 hours per week. This was because the screening of the school population disclosed a need for additional speech therapy services.
In a letter dated May 10, 1974 petitioner requested reinstatement to her position as corrective speech teacher in the Island Park School District. There was no response to that letter until June 27, 1974 when, in a letter bearing that date, the district principal, Mr. Mineur, advised the petitioner that "no new position or positions have been created which are similar to the position which you held in the Island Park School District”. That refusal brought the petitioner to this court seeking reinstatement to her former position as corrective speech teacher as of March 12, 1974, the date respondent contracted for the additional speech clinician.
The Statute of Limitations provided in CPLR 217 is not a bar to petitioner’s claim. It was not until March of 1974 that the respondent engaged a second speech clinician. CPLR 217 provides that the proceeding under article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding”. Although the petitioner never had a communication directly from the board of education, it was on June 27, 1974 that the letter from the district *991 principal informed her that a new position similar to hers had not been created. The papers in this proceeding were served by the respondent on October 15, 1974 well within four months of the June date (cf. Matter of 160 West 87th St. Corp. v Lefkowitz, 43 AD2d 681).
It may be noted that petitioner was employed by respondent subsequent to the abolition of her speech teaching position first as a substitute teacher in the first grade for the school year 1971-1972 and then as a per diem substitute to date. It is undenied that petitioner was a competent teacher, that she was faithful and devoted to her duties and that she received satisfactory ratings.
The gravamen of petitioner’s argument is that when in March, 1974 respondent entered into the contract with the Woodmere Center for two part-time speech clinicians for a total period of 30 hours per week, this arrangement created a position similar to the one previously held by her and pursuant to section 2510 of the Education Law she is entitled to be reinstated. Respondent’s opposition to this application centers around two points, first and foremost is that the present arrangement results in a substantial financial savings to the school district and second the Woodmere Center’s services are preferable because it utilizes a cycle program so that highly concentrated remediation is achieved.
This court does not dispute respondent’s authority to bring about economies in its operation especially when confronted with today’s "spiraling operating costs and ever increasing demands on their tax bases” nor do we take issue with its right "to consolidate and abolish positions for economic reasons” (Matter of Young v Board of Educ., 35 NY2d 31, 34). However, as the Court of Appeals noted in Young v Board of Educ. (p 34), "[h]ad a new or part-time position been created to carry on the work formerly done by petitioner, a different question would be presented”. Subdivision 1 of section 2510 of the Education Law in essence provides that "[i]f the board of education abolishes an office or position and creates another office or position for the performance of duties similar to those performed” the person holding such position at the time of its abolition shall be appointed to the newly created position "without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled” (see, also, 52 NY Jur, Schools, § 359; cf. Matter of Rockville Centre Teachers Assn. v *992 Board of Educ., 48 AD2d 698). Subdivision 3 of section 2510 further provides that if a position is abolished without creating a new position then the person filling the position when it is abolished shall be placed on a preferred list for appointment to a vacancy that then exists or may thereafter occur in a position similar to the one which such person filled without reduction in salary or increment. Further, the persons on such preferred list shall be appointed to any vacancies in similar positions at any time within four years from the date of the abolition of their position. Thus the key to the issue for determination before this court is whether the two speech clinicians although employed by the Woodmere Center for Speech Disorders, working a total period of 30 hours per week are performing similar duties to those previously performed by petitioner. In construing the statutory word "similar” it has been said that "[a] liberal interpretation must be given to the term 'similar’ in order to prevent erosion of the tenure rights of the incumbents of abolished positions [citing cases] * * * The test of whether the duties of the two positions are in fact similar is whether more than one-half of the functions to be performed by the incumbent of the new position are those which petitioner performed in his old position [authority cited] * * * This test, however, was not intended to authorize a wooden or mechanical comparison of duties and responsibilities of job descriptions where the duties and responsibilities associated with a new position are unquestionably similar to those of the former position [citing authority]” (Matter of Elkins, Decision No. 8934, Dec. 12, 1974; see, also, Matter of Ward, 13 Ed Dept Rep 273).
After hearing all the testimony presented and considering the evidence submitted, this court is convinced that the two part-time speech clinicians performed not only similar but substantially the same duties which petitioner performed when her position was abolished. Both positions screened the children to determine whether any speech impediments existed, grouped children to establish classes, worked on correcting speech disorders, evaluated children’s progress, and held conferences with parents, teachers and school official in charge. The only differences discernible were the methods each pursued in correcting the speech defects and the total number of students each worked with during the school year. Under the circumstances petitioner is entitled to be reinstated (Matter of Baron v Mackreth, 30 AD2d 810, affd 26 NY2d *993 1039; Matter of Abrams v Ambach, 43 AD2d 883) since it is less than four years after the abolition of her position.
Respondent argues that the program employed by the Woodmere Center for Special Disorders produces faster and better results than the methods applied by petitioner in working with the children. This argument cannot be accepted as a valid defense to petitioner’s right to reinstatement because it would defeat the purpose of tenure. "To prevent the use of favoritism and personal preference in the retention of teachers, the statutes are designed to protect tenured teachers within their respective areas, in the order of their seniority, from dismissal without regard for the comparative abilities of the teachers * * * [T]he Board * * * cannot * * * change the employment rules and eliminate a teacher whom it deems less capable than a junior teacher or does not like, without following the usual statutory procedures” (Matter of Silver v Board of Educ., 46 AD2d 427, 431-432).
Accordingly, the respondent is directed to reinstate petitioner as of March 12, 1974 to the position of speech teacher with back pay and benefits, less any compensation she may have earned, except for summer employment, since March 12, 1974 (Matter of Silver v Board of Educ., supra).
Settle judgment on notice.