OPINION OF THE COURT
Paul C. Baisley, J.
The petitioner brings this article 78 proceeding seeking, in effect, to annul the action of the respondent school district in abolishing the position of Assistant Superintendent of Business Affairs. Specifically, the petitioner demands judgment: (1) directing the respondent to reinstate the petitioner in the position of Assistant Superintendent for Business Affairs; (2) or alternatively, directing the respondent to appoint petitioner to the position of Assistant Superintendent for Instructional Services and Curriculum; (3) or alternatively, to appoint petitioner to the position of Administrator for Operations or the position of Business Manager.
The grounds for the requested relief were stated in seven causes of proceedings which alleged that: (1) abolition of petitioner’s position was done in bad faith; (2) the respondent school board has failed to adhere to subdivision 2 of section *49 2510 of the Education Law by failing to dismiss the person having the least seniority within the tenure of the position abolished, and that therefore, the actions of the board were arbitrary, capricious and contrary to law; (3) the failure to appoint the petitioner to one of the newly created positions was arbitrary and capricious and contrary to law; (4) petitioner’s position was never legally abolished; (5) the newly created positions were similar to the one abolished, and that pursuant to subdivision 1 of section 2510 of the Education Law, the petitioner has a right to those positions superior to that of the incumbents; (6) by operation of subdivision 3 of section 2510 of the Education Law the petitioner’s name was placed at the top of a list for eligible candidates for administrators within the respondent school district, but in violation of that provision, two other persons were appointed to administrative positions in lieu of the petitioner; (7) the only method to remove petitioner was by operation of section 3020-a of the Education Law, and that the respondent school district failed to comply therewith.[1]
The petitioner had served as Assistant Superintendent for Business Affairs in the respondent school district from 1967 through September, 1977. Prior to 1976 the petitioner had the following responsibilities:
1. Data processing also referred to as warehouse and printing room.
2. Transportation and management.
3. Building and Grounds.
4. Purchasing.
5. Budget development and compilation.
6. Financial planning.
7. To supervise accounting and auditing of various school district records.
8. Cost analysis and business research.
9. To study and recommend budgetary procedures.
10. To assist in the recruitment of various personnel.
*50 11. To act as an advisor regarding the new building program.
12. To manage the school district insurance program.
13. To administer school lunch services.
14. Such other responsibilities as may be assigned by the Superintendent of Schools.
Both sides agree that beginning in 1976 the business functions of the school district were unsatisfactory, in part because the petitioner was overburdened. Therefore, in February of 1976 the responsibility for data processing was removed from petitioner and assigned to the Assistant Superintendent for Instructional Services and Curriculum (the position held by the respondent Lo Prestí). On November 30, 1976, certain of petitioner’s duties (purchasing and records management) were transferred to the Assistant Superintendent for Instructional Services and Curriculum (the position held by the respondent Lo Prestí) and petitioner’s duties with respect to plant operation and maintenance (also referred to as Building & Grounds) were assumed by the Superintendent of Schools (the respondent Ahern). Thus, these 1976 reassignments removed the first four duties enumerated above from the petitioner, and conferred those responsibilities upon the Superintendent and the Assistant Superintendent for Instructional Services and Curriculum.
Thereafter, pursuant to the recommendation of petitioner, the school district commissioned a study of its business and financial operations. A report prepared by Cressap, Mc-Kormick & Paget, Inc., hereinafter referred to as Cressap, was sumbitted on July 20, 1977. The report recommended, inter alia, various reorganizational changes. The Cressap report was modified by the respondent Ahern principally to the extent of eliminating the petitioner’s job title and creating the two new positions (Business Manager and Administrator of Operations) to perform some, but not all of the duties previously performed by the petitioner. The plan as modified was adopted, and petitioner’s employment with the school district was terminated. Petitioner then applied for one of the newly created positions, but petitioner’s request was rejected. The petitioner contends that his position was wrongfully abolished or alternatively, that he was wrongfully denied employment in one of the newly created positions.
Upon formal adoption of the Cressap plan as modified, the first four duties originally performed by petitioner, but at the *51 time of reorganization in September, 1977 performed by the Superintendent and the Assistant Superintendent for Instructional Services and Curriculum, would be assigned to the two newly created positions (i.e., duties numbered 1 and 4 were to be performed by the Business Manager, and duties numbered 2 and 3 were to be performed by the Administrator for Operations). Under the reorganization, the remaining duties were reclassified, and/or reassigned to others. The newly created position of Business Manager is responsible for: (1) preparation of financial report; (2) financial planning; (3) supervision of the insurance program; (4) co-ordination of accounting; (5) purchasing; (6) data processing; (7) administering employee benefit programs; (8) employee time records; (9) devising an expenditure central system. The newly created position of Administrator for Operations is responsible for: (1) supervision of buildings and grounds; (2) supervision of transportation program; (3) collecting data for school district budget; (4) supervise the audit of school district expenditures; (5) supervise food services; (6) recruit and hire noncertified personnel; (7) administer all Federal funds received; (8) labor negotiator for noncertified employees.
The petitioner argues that of 13 definitive duties (1 being omnibus in nature) of which he was responsible for prior to 1976, 9 have been directly transferred to the newly created jobs[2] and 3 have been indirectly transferred to these new positions.[3] Thus, petitioner contends all but 1 of the functions performed by him prior to February, 1976 are currently being performed by the 2 newly created positions. After the 1976 reassignments, out of his 9 remaining duties, 5 were directly, and 3 indirectly, to be performed by the holders of the 2 newly created positions.
On the other hand, from the respondents’ perspective, from the date of abolition of petitioner’s position, the newly created position of Business Manager contains only 3 of the 9 specified duties formerly performed by petitioner.[4] Even adding the two duties performed by petitioner prior to the 1976 reassignments, the total number of functions that were once performed by the petitioner are arguably only 5 of the 9 functions currently being performed by the Business Manager. Similarly, at the date of the abolition of the petitioner’s *52 position, the respondent Administrator of Operations is responsible for 8 duties; 2[5] 6*of these duties were directly traceable back to petitioner’s position, and 2 others[6] were tangetially related to functions formerly performed by the petitioner. However, of the 8 duties now performed by the Administrator of Operations, 6 were arguably the responsibility of the petitioner prior to theo1976 reassignments.
With respect to petitioner’s first cause of proceeding alleging bad faith, the court concludes that such allegations were not proved. The facts mitigate against a finding of his nature. The petitioner’s duties were reduced, and then subsequently his recommendations for the reorganizational studies were accepted. The court finds that the reorganizational study was motivated by a good faith desire to improve the business functions of the district. The adoption of the report by Cressap resulted in the abolition of the position of Assistant Superintendent for Business Affairs and the termination of petitioner’s employment with the school district. It is possible that some members of the board may have wanted to oust Mr. Weimer from the district, and that the reorganization may have provided a vehicle for the achievement of that goal. The court concludes such speculation is unwarranted, as it is clear that the motive behind reorganization had nothing to do with petitioner, and was effected in all respects, in good faith, for the betterment of the district. Accordingly, the petitioner’s first cause of proceeding must be dismissed.
The gravamen of the petition therefore, centers around the allegations contained in petitioner’s fifth cause for proceeding, to wit, the application in the first instance of subdivision 1 of section 2510 of the Education Law. That section provides as follows: "If a board of education abolishes an office or position and creates another office or position for the performance of duties similar to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office or position thus created without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office he has filled.”
The threshold question is whether either of the new posi *53 tions created is similar to the position abolished. In the past, such considerations were virtually unnecessary because the school districts in the State were expanding. But a declining school population, coupled with escalating costs and austere economic times, have caused, and in all probability will continue to cause reductions in various school districts.[7] Thus, the law in this area is new and ever changing. Two additional facts in this case exacerbate the difficulties present in any analysis of this nature. One is that the positions in question are administrative positions as opposed to teaching positions, and do not readily lend themselves to the same analysis established by the Commissioner of Education and the courts in determining questions of section 2510 of the Education Law rights. Second, analysis is further complicated by the fact that the parties have hotly contested which former duties of the petitioner can be utilized as a basis of this comparison for determining what constitutes similar positions. The petitioner argues that the analysis must be had as to those duties required of the petitioner prior to the 1976 reassignments of duties to the respondent Ahern, and the respondent Lo Prestí. He further contends that the February and November, 1976 reassignments were not intended to be permanent. The respondents argue that the only basis for comparison can be that of the position abolished at the time of the abolition (i.e., Sept., 1977) and that the reassignments were intended to be permanent. The court is of the opinion that such reassignments were intended to be, and were in fact, permanent.
Because teaching positions usually involve a single function or at the verly least the functions are at least more easily recognized and accepted than that of administrators, the Commissioner of Education and the courts have been able to devise some criteria, unique to teachers’ functions, as an aid in applying subdivisions 1 and 3 of section 2510 of the Education Law, i.e., the so-called 50% rule discussed infra (Matter of Baron v Mackreth, 30 AD2d 810; Matter of Ward v Nyquist, 55 AD2d 751; Matter of Abdallah v Board of Educ., 61 AD2d 1096; Matter of Bork v City School Dist. of City of North Tonawanda, 60 AD2d 13). On the other hand, cases involving administrative positions are not conducive to either quantitative analysis (i.e., the number of functions performed) or qualitative analysis (i.e., the time spent on the performance of *54 enumerated duties). This difficulty confronting an ever growing number of Trial Judges, reinforces the plea by the Court of Appeals for legislative reform in this area (Matter of Chauvel v Nyquist, 43 NY2d 48; Matter of Amos v Board of Educ., 43 NY2d 706).
However, since no other test has been devised to aid the court in its determination, precedent would seem to require the above type of analysis. Opinions of the Commissioner of Education have led to an oft-cited rule of thumb for determination of similarity under subdivisions 1 and 3 of section 2510 of the Education Law. It states that similarity exists where more than one half of the functions to be performed by the holder of the new position are those which were performed by the holder of the abolished position (Mairs v Board of Educ., 82 Misc 2d 989; Matter of Elkins, 14 Ed Dept Rep 193; Matter of Abrams, 14 Ed Dept Rep 131; Matter of Evans, 10 Ed Dept Rep 156). Both the petitioner and the respondents suggest that this quantitative test has been modified to a new "expectable duties” test (i.e., qualitative test), where an administrator "will not be considered transferred outside his tenure area if he is not asked to perform duties which could not have been assigned to him had he remained in the old position” (Matter of Coates v Ambach, 52 AD2d 261, 263, affd 42 NY2d 846; emphasis added). However, the Court of Appeals has recently held that the board need not, indeed should not on reinstatement cases, consider tenure areas because there is no duty to reinstate individuals to a position in an individual tenure area, but only to positions to which they are qualified (Chauvel v Nyquist, supra).
Chauvel (supra) therefore suggests that Coates (supra) is not applicable to that portion of petitioner’s suit which seeks reinstatement (Education Law, § 2510, subds 1, 3; petitioner’s 1st, 3d, 5th and 6th causes of proceeding) because in such instances consideration of tenure areas need not be had. Analysis of a party’s section 2510 (subds 1, 3) of the Education Law rights is solely confined to the question of similarity. Thus, the earlier test established by the Commissioner of Education in his decisions does afford some guidance. Of course, the application of this so-called 50% rule was never intended to be mechanical and absolute, and great liberality is given to extending the percentage one way or the other (Matter of Bork v City School Dist. of City of North Tonawanda, supra).
*55 Even so, the burden of proving that the petitioner falls within the protection of the rule is on the petitioner (Matter of Grossman v Rankin, 43 NY2d 493; Haberman v Codd, 48 AD2d 505). The petitioner did elicit testimony that respondent Barton spent more than 50% of his time performing duties which the petitioner performed prior to the permanent reassignments of duties in 1976. This proof falls far short of the mark. The position for comparative purposes is "the position abolished” (Education Law, § 2510, subds 1, 3) and all the duties included therein, and not an identically titled position with substantially different responsibilities. Significantly, the petitioner was unable to testify how much time he allocated to any of his duties (either prior to or subsequent to the reassignment of duties in 1976). Accordingly, the court holds that either separately, or combined, the functions of the two newly created positions were not similar to the position abolished (Matter of Bork v City School Dist. of City of North Tonawanda, supra).
Petitioner’s remaining grounds for the requested relief rests on the allegation contained in his second cause of proceeding that the abolition of his position was illegal, insofar as it violated subdivision 2 of section 2510 of the Education Law, to wit, that there were others with less seniority than petitioner within his area of tenure. The court is not persuaded by this argument.
Assuming, arguendo, that petitioner’s tenure with respect to the position held prior to the permanent reassignment of 1976 was transferable to the position held thereafter, and that such tenure was not waived, the petitioner can only prevail upon a finding of this court that there is only one area of tenure covering all administrators. In Matter of Coates v Ambach (52 AD2d 261, supra), the court recognized the possibility of multiple areas of tenure in the administrative-supervisory field. The court finds that the petitioner’s position was within an area of tenure distinct from that of the other respondent administrators. Admittedly, the lines of these areas of tenure are blurred by overlapping of various administrative functions. The court observes, however, that one of the purposes of the proposed reorganization was to sharpen the definition of those boundaries, which is not to say that these distinctions had not existed, prior to the reorganization. The court concludes that these differences did create separate areas of tenure. As such, petitioner was the only holder of a position *56 within his area of tenure, and upon the abolishment of his position, he therefore had the least seniority (Education Law, § 2510, subd 2).
Furthermore, the court directs the parties’ attention to the fact that abolition of a position, and the division of the responsibilities formerly held by the holder of the abolished position, and reassignment to other personnel is not uncommon. Despite the fact that the petitioner had been employed in the district longer than the respondents Lo Prestí, Barton and Bengrin, the abolition of his position, and the consequent division of petitioner’s former duties pursuant to the reorganization to these respondents was not violative of subdivision 2 of section 2510 of the Education Law (see Matter of Beers v Nyquist, 72 Misc 2d 210). The division of duties formerly associated with an abolished position does not necessarily violate the tenure rights of the incumbent of the abolished position (Matter of Coccari, 12 Ed Dept Rep 139).
In rendering its decision, the court has repeatedly referred to the difficulty in applying the prevailing legally sanctioned rules of thumb. The court is disturbed by the possibility that the application of these standard principles, while of great utility in analyzing situations involving teachers, impose a difficult burden of proof on administrative or supervisory personnel. Therefore, before reaching an ultimate conclusion, the court considered one additional test, which stated simply is, did the board, purposefully set forth on a course of action to avoid the intent of the Legislature as encompassed in section 2510 of the Education Law?[8]
One purpose of this statute is to prevent a school board from abolishing a position as a method for disposing of unwanted tenured personnel, when in fact, no savings in cost or increase in efficiency is intended to be realized (Board of Educ. v Niagara Wheatfield Teachers Assn., 54 AD2d 281). Another purpose of the statute is to protect tenured personnel within their respective areas of tenure (Matter of Silver v Board of Educ., 46 AD2d 427). Even when measured against this yardstick, the court concludes that the board’s action cannot be said to be violative of even the spirit of the Education Law. The court finds that the actions of the board were not principally motivated by a desire to rid itself of an undesired tenured *57 employee.[9] The facts adduced at trial clearly show that the growth of the school district placed a great deal of responsibilities on the petitioner which resulted in unsatisfactory financial reports to the board. As a result of a memorandum by petitioner, it was recommended that the superintendent relieve petitioner of various duties and assign them to others. The board followed another suggestion of the petitioner, and commissioned the Cressup study in May of 1977, which was completed in July of 1977 and implemented in October of 1977. At this juncture it is important to note that the petitioner alleges a conspiratorial meeting was held in September of 1977 at which petitioner’s fate was determined by the respondent Superintendent and various other members of the board. The proof indicates that a meeting was held, the affairs of the district were discussed, and several alternatives were suggested to the resolution of the school district’s problems. But it strains credulity to believe the board conspired "to dump” the petitioner. The petitioner’s proof with respect to this allegation was speculative, and otherwise insufficient.
The testimony of numerous witnesses suggested, and the court so finds, that there was no ascertainable intent to rid the district of the petitioner until the rendering of the Cressap report. Upon the rendering of the report, various changes were made by the respondent Ahern.
The principal effect of these changes was to abolish the title of Assistant Superintendent of Business Affairs, and to create the title Administrator for Operations. The duties to be assigned were virtually identical to those suggested by Cressap, and those duties were not all currently being performed by the petitioner. Under the Superintendent’s revision, the newly created positions of Business Manager and Administrator of Operations were two coequal administrators directly responsible to the Superintendent, whereas under Cressap only the Assistant Superintendent of Business Affairs (now Administrator of Operations) was directly responsible to the Superintendent. The reason for this deviation was based on a desire to create greater accountability and efficiency. These revisions while deviating slightly from the organizational flow chart suggested by Cressap were not at variance with general principles advocated by that report (the recommendation contained in the report suggested the grouping of functions). Moreover, *58 the testimony of persons responsible for the report was that the split suggested by Ahern was appropriate, and that several of the duties assigned to each of the newly created positions were beyond the expertise of the petitioner.
Regardless of the titles employed, it was apparent to the Superintendent and the board, that the petitioner would not be able to efficiently handle all the duties as organizationally apportioned by the Cressap report. The court finds respondents acted primarily, if not solely, with a desire to advance the legitimate interests of the school district. Accordingly, the board acted properly in abolishing the administrative post in question (Education Law, § 1709; Matter of Young v Board of Educ., 35 NY2d 31).
In view of all the circumstances as set forth above, the board’s action cannot be considered arbitrary or capricious, and the petition in all respects is dismissed.

. By order of this court dated Nov. 18, 1977, the court consolidated causes of proceeding 1 & 4, 3 & 5, 2 & 6, and dismissed the seventh cause of proceeding. The issues to be determined at trial were: (1) whether the position was properly abolished; (2) whether in light of the petitioner’s prior duties, the two Assistant Superintendent positions were in the same tenure area; (3) whether the two newly created positions carry the same duties as the abolished position, and (4) petitioner’s entitlement to relief pursuant to subdivision 3 of section 2510 of the Education Law.

. Duties numbered 1, 2, 3, 4, 6, 7, 10, 12 & 13.

. Duties numbered 5, 8, & 9.

. Financial planning, preparation of financial reports and insurance program.

. Supervision of food services program and the recruitment of noncertified personnel.

. Respondent calls to the court’s attention that the holder of the prior position did not have a supervisory function in relation to these duties.

. However, in this instance abolition was effected as a result of an expanding school population and the attendant responsibilities thereto.

. Section 2510 of the Education Law cannot be utilized by school boards to avoid the mandate of section 3012 et seq. of the Education Law.

. See n 8.