## SECOND DEPARTMENT, APRIL, 1980

### (April 16, 1980)

In the Matter of GEORGE C. WEIMER, JR., Appellant, v BOARD OF EDUCATION OF THE SMITHTOWN CENTRAL SCHOOL DISTRICT, No. 1 et al., Respondents, and LAWRENCE CLANCY, Intervenor-Respondent.—In the above-captioned proceeding, the appellant, respondents and substitute intervenor-respondent have separately moved for reargument of an order of this court, dated February 4, 1980 [74 AD2d 574] which determined an appeal from a judgment of the Supreme Court, Suffolk County, entered January 9, 1979.

Motions denied. On the court's own motion, its decision and order, both dated February 4, 1980, are vacated and recalled, and the following substituted decision is rendered: In a proceeding pursuant to CPLR article 78, *inter alia,* to compel respondents to reinstate petitioner to the position of assistant superintendent for business affairs, the petitioner appeals from a judgment of the Supreme Court, Suffolk County, entered January 9, 1979, which, after a nonjury trial, dismissed the petition. Judgment reversed, on the law and the facts, with one bill of costs to petitioner payable jointly by respondents appearing separately and filing separate briefs, petition granted, the respondent board of education is directed to offer petitioner either the position of administrator of operations or that of business manager and the matter is remitted to Special Term to determine the back salary due the petitioner, less the amount of earnings from other employment, and any unemployment benefits he may have received. The petitioner was employed by the respondent school district as assistant superintendent for business affairs in October, 1967 and acquired tenure in that position three years later. The respondents Barton and Lo Presti were employed by the school district in other positions and are junior in tenure to the petitioner. Since 1967 the school district's student population and budget have dramatically increased. Until November, 1976 the petitioner's duties remained the same, except that his responsibilities for data processing had been transferred to the respondent Lo Presti in February, 1976. The performance by the petitioner of the duties of his position during 1976 and before was rated by the respondent Ahern (the school superintendent) as excellent. In September, 1976 four members of the seven-member school board met surreptitiously with the respondent Ahern, at which time Ahern proposed that the petitioner's position be abolished, and his duties spread between Lo Presti and Ahern, stating in effect that the petitioner would have to go, though acknowledging that grounds for the petitioner's removal did not exist. Ahern suggested that the duties of the petitioner's position be gradually reduced until the petitioner would leave of his own accord. In November, 1976 the petitioner, unaware of the September, 1976 meeting, submitted a memorandum to Ahern and the school board, outlining the need for additional staff in his office, and urging the retention of a management consultant to study the functions of the office. Soon thereafter Ahern transferred certain operations of the office to himself and to Lo Presti. In May, 1977 a management firm was retained by the school board to review the business operations of the district. The consultant's report, rendered in July, 1977, recommended the creation of a new position to be known as "business manager" to be accountable to the assistant superintendent for business affairs, the petitioner's position. In August, 1977 Ahern, instead of recommending the proposal made by the consultant, recommended to the school board the abolition of the position of assistant superintendent of schools and the distribution of the duties of the position between two new positions to be created of "administrator for operations" and "business manager". The school board adopted the recommendation made by Ahern in September, 1977. Thereafter the respondent Barton was employed as administrator of operations and the intervenor Bergrin (later replaced by the substituted intervenor Clancy) was employed as business manager. The petitioner's application for appointment to one of the new positions was denied. This proceeding followed. It is clear from this record, and we find, that Ahern was seeking to remove the petitioner from his position, though grounds for removal were nonexistent. Hence, his recommendation that the petitioner's position be eliminated, in the face of the report of the consul-

tant, and the action of the school board in furtherance of Ahern's recommendation, were suspect and not made in good faith. We further find that the duties of the petitioner's position were simply transferred to two new positions. The petitioner's tenure could not be thus summarily eliminated by the action of the board. A strong policy must be enforced in guarding tenure, and "it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by manipulation of the requirements for tenure." (*Ricca v Board of Educ.,* 47 NY 385, 391.) Just as under the provisions of the Civil Service Law, a municipality may not abolish a position by subterfuge (*Switzer v Sanitary Dist. No. 7, Town of Hempstead,* 59 AD2d 889, app dsmd 43 NY2d 845; *Matter of Wipfler v Klebes,* 284 NY 248; *Wood v City of New York,* 274 NY 155; Ann., 87 ALR2d 1165, 1184), a school board under the provisions of the Education Law may not abolish a position by subterfuge (*Matter of Amos v Board of Educ.,* 54 AD2d 297, 301, affd 43 NY2d 706; cf. *Matter of Abramovich v Board of Educ.,* 46 NY2d 450, 454; Education Law, § 2510). We find, in addition, that the petitioner, in his position, discharged duties substantially similar in nature to the duties assigned to the new positions. He was thus entitled in any event to be granted relief under the provisions of section 2510 of the Education Law. The petitioner should therefore be offered employment in one of the newly created positions and should receive back pay, less the amount of the earnings from other employment and any unemployment benefits he may have received. Mollen, P. J., Hopkins, Lazer and O'Connor, JJ., concur. [99 Misc 2d 47.]