OPINION OF THE COURT
John R. Tenney, J.
Petitioner has been employed by the respondent school district for more than 20 years. For three years ending in August, 1977, petitioner was the principal at the Brandegee School which contained grades K-8. His position was abolished, and he was reassigned for the 1977-1978 school year as principal of two K-6 schools. He was thereafter assigned to another K-6 school, the Miller School, where he still serves.
There is a different salary structure for K-8 and K-6 principals. Upon his reassignment to a K-6 school, petitioner received the same salary which he had earned as a K-8 principal. However, since his reassignment he has not received the increments to which he would have been entitled had he remained a K-8 principal.
At the time that his K-8 position was abolished, no new position was created by the board. But, in the summer of 1978 two K-8 vacancies were opened. Petitioner was offered neither position, and he thereupon filed a grievance against the respondent on August 15, 1978. The arbitra *130 tor’s award provided that petitioner was to be given “first consideration for the next available vacancy as principal of a K-8 school if he is still an employee of the District and is qualified in terms of certification and evaluation.”
In January, 1980, a K-8 vacancy occurred at the Kemble School but another individual was appointed to fill that vacancy. Finally, in the summer of 1980 a vacancy developed at the K-8 Roosevelt School. Petitioner’s application was rejected, and this CPLR article 78 proceeding resulted.
The applicable statute is subdivision 3 of section 2510 of the Education Law which states: “3. If an office or position is abolished or if it is consolidated with another position without creating a new position, the person filling such position at the time of its abolishment or consolidation shall be placed upon a preferred eligible list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office of position he has filled. The persons on such preferred list shall be reinstated or appointed to such vacancies in such corresponding or similar positions in the order of their length of service in the system at any time within seven years from the date of abolition or consolidation of such office or position.”
There are two issues raised. First, whether the appointment of petitioner to his position in a K-6 school complied with the statutory requirement that he be placed in a “position similar to” his position as a K-8 principal. Petitioner contends that the positions are not similar, and that he is entitled to an appointment as a principal of the Roosevelt School, which appointment has already been granted to respondent, Philip B. Geraci.
The second issue is contingent on a finding that the two positions are similar. The question then becomes whether the statutory mandate that appointment to a similar position be “without reduction in salary or increment” (Education Law, § 2510, subd 3) requires that petitioner remain in the same salary structure such that he would receive future increments as a K-8 principal even though his assignment was at a K-6 school.
*131 On the “similar position” issue the trial testimony established that K-6 and K-8 principals are in the same tenure area and work the same hours. Each is the chief administrative officer and, as such, has responsibility over budget, staffing, discipline, teacher evaluation and parent-teacher relations.
The testimony further revealed that although both jobs include responsibilities over the same basic areas, the problems associated with seventh and eighth grade students are more complex resulting in some additional duties not performed by K-6 principals. In particular, the major structural difference is that K-6 students are taught in self-contained classrooms by a single teacher while older students move from classroom to classroom and are taught different subjects by different teachers. This would seem to create additional scheduling and discipline duties.
Finally, the testimony was in conflict as to the primary focus of a K-8 position. Petitioner and his witness, Martin Sweeney, concluded that a substantial majority of a principal’s time was spent on administering junior high related matters. Respondent Geraci and the superintendent of schools, Edward Perry, both testified that a majority of a K-8 principal’s time is spent in administering K-6 matters.
“[T]he law in this area is new and ever-changing.” (Matter of Klein v Deer Park Union Free School Dist., 110 Misc 2d 332, 334.) Whereas the “50% rule” is reasonably well established as the test to be applied in cases involving teaching positions (Matter of Dinan v Board of Educ., 74 AD2d 922; Mairs v Board of Educ., 82 Misc 2d 989), “administrative positions are not conducive to either quantitative analysis (i.e., a comparison of the number of similar duties actually performed in the newly created position as opposed to the excessed position) or qualitative analysis (i.e., a comparison of the amount of time expended or the emphasis made in the performance of enumerated responsibilities).” (Matter of Klein v Deer Park Union Free School Dist., supra, at p 335.)
The problem of establishing a workable standard is particularly acute in cases such as this which concern a “hybrid” position, as opposed to cases which deal with a more traditional separation of elementary and secondary *132 education and the further division of secondary education into the junior and senior high school levels.
There are some guidelines. Primary among these is that the word “similar” must be given a broad and liberal construction (Matter of Dinan v Board of Educ., supra, at p 923; Matter of Bork v City School Dist., 60 AD2d 13, 15-16), and it becomes unnecessary to consider whether the two positions are “virtually identical”. (Matter of Klein v Deer Park Union Free School Dist., supra, at p 337.)
After consideration of the testimony and other evidence before the court, it appears that the K-6 and K-8 appointments here are “corresponding or similar positions” within the meaning of subdivision 3 of section 2510 of the Education Law. While some of the problems associated with some of the students at a K-8 school may be broader and more complex, the same general skills are employed in both positions. The primary administrative tasks are equivalent even if some of the details are more intricate and/or time consuming at the seventh and eighth grade levels.
Although the two positions are similar within the meaning of the statute, respondent erred in moving petitioner from the group III salary schedule to the group II schedule. The courts have not interpreted the meaning of “reduction in salary or increment”, and the legislative history is silent on that point.
However, the primary purpose of the so-called tenure statutes is to “attract qualified educators and to provide teachers with job security”. (Matter of Feinerman v Board of Coop. Educational Servs., 48 NY2d 491, 496.) The statutes have been consistently construed to promote this protective function. For example, the courts have repeatedly thwarted efforts to denominate permanent positions as temporary thereby preventing “budgetary manipulations”. (Matter of Board of Educ. v Nyquist, 45 NY2d 975, revg on dissenting opn below 59 AD2d 76.) In Ricca v Board of Educ. (47 NY2d 385, 391), the court held that “[e]yen ‘good faith’ violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions.”
The analogy to be drawn is evident. The statute requires that appointment to a similar position shall be without *133 “reduction in salary or increment”. (Education Law, § 2510, subd 3; emphasis added.) Since the very purpose of salary increments is to provide compensation based on length of service, it would be incongruous to read the statute as not applying to future increments. Such a result would conflict with the stated objectives of the Legislature. Petitioner is, therefore, entitled to a judgment reinstating him to his former salary structure with back pay as well as a recomputation of his current salary in accordance with the group III salary structure.
Finally, the court has considered section 8:01 of the collective bargaining agreement which is relied upon by the respondent. To the extent that it may be applicable to petitioner’s situation, it is contrary to the requirements of the Education Law and, as such, is not enforceable as against public policy.